Thank you, Your Honors. Frank Sproul is appearing for the petitioner. In this particular case, I believe the issue is very narrow, and that is simply the applicability of the Moran case in the context of cancellation of removal. It's our position it's undeniably the case that it's applicable, based on the explicit language of the case and the subsequent treatment by other panels. I'm not – the position of the government is that somehow the ruling there is dicta, and that's simply not the case. I mean, the language of the statute states we are addressing an issue of first impression. They engaged in statutory construction. They looked at the various strands of the statutes and announced a new rule and stated that a waiver does exist in the context of cancellation of removal. They found reluctantly that the petitioner in that case smuggled his fiancée, which is not a wife. However, I don't believe I need to – Can that make it dicta? Pardon me? Does that not make it dicta? Hardly. If that's dicta, then some of the most celebrated cases in our jurisprudence are dicta, where they don't – you know, Strickland v. Washington, the attorney was found to be effective. That doesn't mean the standard that was announced is not the rule, especially in this particular case, because what they said was we are construing this statute. The only issue before the Court in Moran was whether – was the applicability of that waiver in the context of cancellation of removal. It was hardly collateral to the case. I mean, the classic dicta is where it's a collateral issue. It's not necessary to the adjudication of the case. This case was adjudicated. They said we are announcing a new rule. We simply find reluctantly that it doesn't apply. There was no prior law on this issue. They simply said the language in cancellation references the language of inadmissibility. Quite literally, the statute of cancellation removal is called cancellation removal and adjustment of status. It's not an unreasonable thing for the Moran panel to find, as they did, that when one is – if you're eligible for cancellation removal, the very next thing you're doing is you're adjusting your status. Well, they just didn't – are you saying that they just pulled it out of the – out of logic? They didn't pull it out of the statutes? No, no. I think it was a brilliant and symmetrical and highly elegant interpretation of the statute. I mean, I think it was rightly decided. They just – the conclusion was, you know, that simply that the statute requires that you – the waiver exists if you smuggle your wife, spouse, parent, or child. In this case, in the Moran case, they said no, it wasn't his spouse, but they certainly announced a new rule. They announced a new construction of the statute. That's not dicta. That's announcing a new rule. And, again, we have – and I believe I submitted a letter brief – where a subsequent panel had no problem determining the meaning and purport of the Moran. They remanded the case. I'd cite another unpublished case, Carrillo-Estrada, 2007 U.S. Lexis 23554. Again, it was a paragraph and a half. The panel had no problem stating, unfortunately, the – you know, the court below didn't have the benefit of Moran, and they simply remanded. So our position is Moran is solid black-letter law. Okay, fine. Go ahead. I mean, essentially, I'm placing all my appellate eggs in the Moran basket. I mean, I just think it is – it's undeniable. I'm sorry. I'm trying to get a note to my clerk. In any event, I'm actually rather intrigued to see what the government position is, and I'll reserve the rest of my time. Thank you. Okay. Could you just explain by way of statutory interpretation how you – in your view, you get to this, since the statute itself doesn't refer to cancellation? Well, no. What they're construing is the cancellation statute in conjunction with the waiver for inadmissibility. And what the Moran panel did was they – you know, one can argue it was an overly generous interpretation of the statute, but it is the law. They stated that we are conflating the grounds of the waiver for inadmissibility in the context of cancellation removal. And they did that not out of thin air, by specific statutory construction. The cancellation statute doesn't talk about pure removability. It's called cancellation removal and adjustment of status. That's a completely reasonable interpretation, that when one is seeking cancellation removal, one is assimilated into the position of entry, one is attempting to adjust their status. The Moran panel then said the waivers of inadmissibility apply in the context of cancellation removal. And it's extrapolation analysis. It's certainly in tension with an earlier case. And there's – we're going to have to deal with that. But I don't understand why you're taking the hard road on this. Why isn't the – as I understand it, the problem was 10 years old, over 10 years old. Why do we need to get to Moran? Why don't you win on the basis of the 10-year termination? Well, no. The determination of the judge was that if you smuggle – if you're guilty of alien smuggling, you simply cannot meet the good moral character requirement and you're barred. It's a – it's not within the 10 years. It's – you are forever barred. You cannot demonstrate good moral character. Oh, even if it's 20 years earlier or 30 years earlier? Well, sure. I guess that – although I'm not sure that was our facts, because the – The violation – the violation wasn't specific. If you look at the violation of good moral character, then there's a 10-year limitation. Why wouldn't that hold? Why do we have to say that because it's alien smuggling, it trumps everything else? Well, because there's another provision that would trip up my client, is because the entry is in 1993. The OSC was issued in 2000. So there's a problem there. Okay. But, I mean, I'd be happy – Just go with me. Suppose there's no problem, because I'm not sure I see the problem that you see. But that's right. If you're a problem, you lose the case if the problem's there. Assuming there's no problem, what I want to find out is why wouldn't the 10 years be sufficient? If you're dealing with good moral character, why wouldn't Ortega Carrera be dispositive of this? That's absolutely – you're correct, Your Honor. I mean, if it's outside of the 10 years for which you must demonstrate good moral character, then the alien would be eligible for cancellation, removal, notwithstanding anybody's feelings on Moran. Why isn't that an easier case for you? I don't know why you're arguing Moran, which is a difficult case for any of us to work with. Because on the date of the hearing, the alien smuggling issue did occur within the 10 years for which the alien had to show good moral character. Is that the relevant date under our law? Well, I guess it is complicated because his contention is that his initial entry was many years earlier, in 1988. So certainly – No, but I think the question is whether the 10 years extends to the final decision of the BIA. Right. Actually, there is a case law that says your good moral character – And it does. Yeah. Yeah. I'll take the easier case then. That's certainly the case that the 10 years runs from post-decision, so it may moot out the issue. But clearly – That's exactly what the BIA case says, is that the commission of this disqualifying act beyond the 10-year period, looking backward from the date of the final administrative decision – that would be the BIA decision, would it not – will not render an alien ineligible for relief on grounds of moral character. So that's your case, isn't it? You're absolutely right. That's why you make the big bucks. The decision was in 1993, and the BIA decision was 2004, but certainly Moran was before us. It was briefed, and there we have it. Okay. Let's hear from the government on this. Good morning, Your Honors. I'm Erica Miles for the United States Attorney General. Before delving into the merits of any of these issues, the government would like to point out the jurisdictional issues here, in that the question that the Court has just been raising was not exhausted before the agency, this issue of the time period during which good moral character should be running. Additionally, the issue of – Shouldn't we remand it, then? If that is a determinative, dispositive issue in this Court's mind, then it should be remanded for the Board to determine in the first instance. However, the government contends that that's not the case. It wasn't exhausted, so he has waived review of that issue. And additionally, he did not exhaust his argument that this 212D11 waiver was applicable. He never raised that to the Board. He never sought to apply for this waiver. He only challenged whether or not he lacked good moral character based on his conduct. Even though the Moran decision came out after the Board's decision, there was no other Ninth Circuit case law on this issue. It was an open issue and needed to be raised to the Board for the Board to consider in the first instance, because it was not considered by the Court. Okay. So in either event, we'd have to remand? Excuse me? So a remand would be necessary? If this Court determines that it was waived, it should be remanded for the Board to consider. I'm asking for the government's position. Your position is that on the Moran issue, it would have to be remanded. He failed to exhaust by raising this issue of applicability of the waiver. However, if the Court determines that this is an issue it may review, the government contends that a 212D11 waiver of inadmissibility is not only inapplicable in the context of cancellation of removal, it's useless. And it's useless because admissibility is not a requirement for cancellation of removal. Most applicants for this form of cancellation of removal are, in fact, inadmissible. That's not a bar or a hindrance to being eligible. What's a hindrance is good moral character. So in this context, we have Mr. Sanchez, who is statutorily barred from a finding of good moral character based on his conduct. And the provision 101F3, which defines that he shall not be considered to have good moral character, says whether inadmissible or not, if you have engaged in conduct described in the inadmissibility of smuggling condition. This waiver is a waiver of inadmissibility, the technical status. Well, let me tell you what's bothering me, counsel. That is all in the definition of good moral character for inadmissibility. And for good moral character, it sends you to that definition. Because that's the only definition of good moral character there is, is for inadmissibility. So therefore, don't you wind up saying that good moral character in the cancellation context is the same as good moral character in the inadmissibility context, and the same waiver applies? I mean, it seems to me that's what the Moran panel did. However, this is a distinguishing issue that the Moran panel did not consider, in that it's not the inadmissibility that's a bar, though. It's just the conduct. It's the described in conduct. And as you pointed out in the definition, while it cross-references you to the conduct described in this inadmissibility context, it doesn't cross-reference you anywhere that leaves an open determination for lack of good moral character. So it's using these other provisions that have conduct described in as a guiding principle, and those are statutory preclusions from good moral character. But there is this catch-all phrase for you can come up, the immigration judge or the fact finder can come up with other reasons for finding lack of good moral character that aren't defined specifically in the statute. Or did he base it on the smuggling? It was based on the smuggling, was it not? Yes, it was based on the conduct described in the smuggling provision, the inadmissibility provision. But, again, we have a very big distinction here, because you want us to base it on some other provision? No, no. I want, what the government is arguing is that while the waiver applies to technically waive the status of inadmissibility, it does not waive the conduct of the lack of good moral character. And the distinction here is if you look at adjustment of status, if you look at the two forms of relief we have here. If you have a person who's applying for adjustment of status under Section 245, based on, as even described in the 212 provision, 1211D waiver, based on a relative relationship. You have a sponsoring relative here in the United States, the person's applying for adjustment. This waiver would be wholly applicable and useful, because you need to be admissible to qualify for adjustment of status. And under that provision, there is no good moral character requirement. So it's wholly useful in that context. However, when you look at adjustment of status in the context of cancellation of removal, the only requirement for adjusting your status is meeting the statutory requirements under cancellation of removal. I just want to make sure I understand. You're saying that there's no good moral character requirement for it? For Section 245 adjustment of status. No. It's a discretionary provision. And that's the type of adjustment of status. That's the language included in the 212D11 waiver, that it's talking about its applicability. The plain language of the 212D11 waiver is referring to that type of adjustment of status. And if you look at that type of adjustment of status. It's not having a waiver if there's no good moral character requirement. Because you need to show you're admissible for 245. It waives inadmissibility. The technical status of inadmissibility is what it waives. So it's wholly useful for adjustment based on an alien relative petition. However, it's not useful in the context of adjusting under cancellation of removal, because admissibility is a non-issue. It doesn't matter. It's the conduct where you find lack of good moral character. And while this waiver waives the technical status of inadmissibility, which is helpful for relative-based Section 245 adjustment, it doesn't waive the conduct of lacking of good moral character for purposes of cancellation of removal. Which is why it doesn't make sense. And in Moran, this issue wasn't discussed, this distinction between the technical status of inadmissibility versus the conduct of lack of good moral character. So this is a distinguishing issue before the Court, that this Court could decide. Kennedy, I'm having an awfully hard time following your argument.  Basic vision we're talking about. It says, in general, any alien who at any time knowingly has encouraged, induced, solicited, so forth. Any other alien to enter to enter or try to enter the United States, in violation of law, is inadmissible. Correct. Okay. We're not talking about whether it's admissible or not or inadmissible for the purposes of the hearing. We're talking about whether it is actually a disqualification for admissibility, right? What we're talking about here is while he is technically inadmissible under this provision, we're actually looking at the Section 101F3 definition, which refers you to this inadmissibility provision. And it says, described in. And if you look at 101F3, it even has the phrase, whether inadmissible or not, if you are a person in this class of individuals, in this smuggling inadmissibility provision, if you haven't, are described in this provision. So it's referring to the conduct described in 212A6E1. The conduct. And it says whether you're inadmissible or not. So good moral character finding, lack of or lack thereof, I should say, has nothing to do with your status of being admissible or inadmissible. It's purely looking at conduct. And that's why the 212. And is that what the IJ and the BIA decided on? No, they did not. This issue was not presented before the IJ or the BIA. Okay. Well, we're going to go around this hoop again, but let me ask you one more question with regard to this Petitioner. Certainly. The jurisdictional question with respect to the BIA's decision coming down after the 10 years has elapsed. He could not know when the BIA's decision was going to come down. So it's pretty hard to say that he should have exhausted that issue before the BIA in his original appeal. Are you saying that he should have exhausted it by a petition for reopening after the decision came down and then appeal on the question just of whether or not in their discretion they should have reopened? That doesn't make a lot of sense. Sure. That is one avenue, however, for remedying. Yeah, it's one. But do we have any law that says that you have to do that? I have not looked into that, no. Because this is BIA law. But the 10-year period that you would apply for whether or not they've maintained continuous residence is the exact 10-year period you should be applying in determining the period for good moral character. And his conduct was 93. Is that what the BIA decision said in Ortega-Couture? I don't have that decision in front of me because this was not an issue raised to this court. It should be weighed over this court. I just read what they said, and they said something entirely different than you just did, and that is that it ends with the final administrative decision, which would be the BIA decision. If that's the case, if that's how this court would interpret it. However, the government would submit that petitioner never raised it for this court's consideration, and it should be waived before this court. The government hasn't had an opportunity to respond. Well, as Judge Schroeder just said, they weren't going to know when the BIA decision was going to come out. Correct. But he did know at the time that he filed his petition before this court, and he had an opportunity to raise it in his opening brief and in a reply brief to this court, and he's never raised that issue. So it should be waived before this court right now in the context of this case. Okay. Thank you. Thank you. Very briefly, in terms of the exhaustion question, I mean, I certainly agree with Your Honor that I'm not sure I had to be clairvoyant as to the exact date that the BIA decision would come down, and I don't believe there's any case law that you're wired for. Well, the issue she raised is you should have known it at the time you filed the brief. And it isn't waiver below, it's waiver to this court. Right. What's your response to that? Well, this is a reviewing court. I can't bring up issues that were not, I mean, that were not addressed by the board. I mean, the sole issue was good moral character, vis-à-vis alien smuggling, not the passage of time. But in retrospect, I should have. But I mean, this is a reviewing court. That would have been essentially new evidence. And the other exhaustion point I'd like to make is I don't believe I had to be clairvoyant vis-à-vis Moran. Moran did not exist at the time of the BIA case. And so I've made other arguments. And I do believe our case law does not require, I mean, if there's subsequent case law that is truly a case of first impression, I haven't waived it when that case was not published at the time of my brief before the BIA. I don't believe that's the exhaustion requirement. I mean, Moran specifically said this is a case of first impression. There was nothing in the legal landscape vis-à-vis Moran at the time I wrote that the BIA case was decided. So I don't know if clairvoyance is an exhaustion requirement. I'm not sure I get the distinction. I was talking about the 10-year waiver. I was talking about both exhaustion requirements. Well, just stick with the 10-year waiver. Sure. The position of counsel is that you certainly knew about the 10-year waiver. It's in the statute. And that you should have briefed it to us. And having not done that, it's waived. Now, just answer that specific question. Right. And I tried to earlier, in that that, since the 10 years, the alien smuggling occurred in August of 93. The BIA decision was in 2004. At that point, 10 years had passed. However, at the time I wrote my brief, the 10 years hadn't occurred, so I didn't have that issue before me before the board. So that was an issue, I mean, as a reviewing court, that issue was simply not before the board. Before the board, yes. It would have been perhaps appropriate for a motion to reopen. But in retrospect, mea culpa, I should have done that. But I don't believe it was before. It was not part of the record below, so it would have been inappropriate for me to bring it up here. I mean, that would be my response to the exhaustion question. So I take it you agree with her that it's not before us. I'm happy with Moran and the alien smuggling. Okay. Thank you. Ma'am, stand by. Thank you. Thank you. We'll hear for the next. The case just argued is submitted.
judges: Wallace, Hug, Schroeder En Banc Panel:, Kozinski, Kozinski, Pregerson, Pregerson, O'scannlain, O'scannlain, Rymer, Rymer, Kleinfeld, Kleinfeld, Silverman, Silverman, McKeown, McKeown, Fisher, Fisher, Paez, Paez, Callahan, Callahan, Smith, Smith